# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DANIEL LUCHTERHAND, an individual, )
                                )
             Respondent, )
                                )
            v. )
                                )
CHARLES "CHARLIE" SILVERS, an )
individual; and U.S. ENGINES )
CORPORATION, a Washington )
corporation, d/b/a U.S. ENGINE, INC., and )
U.S. ENGINES, and U.S. MARINE )
ENGINES CORPORATION, and U.S. )
ENGINE AND IMPORT ENGINE, INC.; )
and LAKE WASHINGTON BOAT, INC., )
d/b/a LAKE WASHINGTON BOAT )
CENTER, )
                                )
            Defendants, )
                                )
MICHAEL CROSSAN, an individual, and )
ROWENA CROSSAN, an individual, d/b/a )
LAKE WASHINGTON BOAT CENTER, )
                                )
            Appellants. )
                                )

No. 71208-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 2, 2015

APPELWICK, J. — The Crossans appeal the trial court's denial of their CR 60 motion to vacate a judgment on an arbitration award. The Crossans sought a trial de novo. Luchterhand sought judgment on the arbitration award, arguing that the Crossans had waived their right to trial de novo by not participating at the arbitration without good cause. The trial court struck the Crossans' request for trial de novo and entered judgment in favor of Luchterhand. The Crossans moved to vacate the judgment, claiming that Michael's sickness on the day of the arbitration constitutes an unexpected illness or misfortune that is a basis for vacation of the judgment under CR 60. The unexpected illness or misfortune did not prevent the Crossans from participating in the litigation regarding their request for

a trial de novo. The denial of the trial de novo necessarily resolved that the Crossans did not have good cause for failing to participate in the arbitration. We affirm.

## FACTS

Daniel Luchterhand purchased a boat engine from U.S. Engine Inc. U.S. Engine, Inc. was governed by Michael Crossan and Rowena Crossan.[1] Luchterhand experienced mechanical difficulty with the engine on several occasions. After attempts to repair the engine failed, Luchterhand sued the Crossans for violations of the Consumer Protection Act, chapter 19.86 RCW, and breach of warranty.

The dispute proceeded to arbitration. The arbitration was initially scheduled for May 3, 2013. The Crossans requested that the arbitration be delayed so they could obtain counsel and adequately prepare. Consequently, the arbitration date was extended until May 20, 2013. On May 17, 2013, the Crossans requested another continuance, because they planned to make an evidentiary video on May 15, 2013 and the video would not be ready for the arbitration. The arbitrator, Robert Henry, agreed and the arbitration was rescheduled to June 10, 2013. Luchterhand's counsel then requested a continuance because of a family vacation. The arbitration was then set for June 17, 2013 at 9 a.m.

On June 17, 2013 at 8:45 a.m., Michael contacted Henry and said that he "cannot even e[-]mail correctly just sick." In that same e-mail he wrote a few more sentences defending against the lawsuit. Henry responded that the hearing would not be postponed again and that he expected both parties to arrive at 9 a.m. Earlier that morning at 8:35 a.m., Michael e-mailed Luchterhand's attorney and said that he was dehydrated due to

---

[1] Moving forward we refer to the Crossans by their first names for clarity. No disrespect is intended.

2

hot weather and could not attend the arbitration. Michael explained his illness in one sentence, but continued on for several paragraphs in which he defended against the lawsuit. Neither Michael nor Rowena appeared at the arbitration on June 17. But, the arbitration proceeded and Luchterhand presented over three hours of testimony, evidence, and argument. Henry entered an arbitration award in favor of Luchterhand on June 25, 2013—over a week after the arbitration was held. The arbitration award indicated that the Crossans failed to participate at the hearing.

On July 3, 2013, the Crossans filed a request for a trial de novo with declarations of Michael and Rowena attached. Michael's declaration explained that he has cancer and that when he becomes ill he is unable to move for days. He claimed he was ill on the date of the arbitration. Rowena's declaration explained that Michael got sick the afternoon before the arbitration and was not able to move again until the following day. She cited to Michael's cancer as the reason for their absence and said, "[A] full report is available from his doctors [at the University of Washington] hospital and Seattle cancer care center."

On July 31, 2013, Henry issued an amended arbitration award including attorney fees and costs for Luchterhand. The award cited to MAR 5.4 and indicated that the award was based partly on the failure of the Crossans to participate at the arbitration.

On August 8, 2013, the Crossans filed a request for a trial de novo from the July 31, 2013 award. The Crossans' request was timely as it was made within the 20 day period mandated by MAR 7.1. Subsequently, on August 23, 2013, Luchterhand filed a motion to strike the request for a trial de novo. Luchterhand argued that the Crossans waived their right to request a trial de novo pursuant to MAR 5.4 and that they failed to

show good cause to the arbitrator for their absence. That same day, Luchterhand filed a motion for judgment on the arbitration award. On September 5, 2013, the Crossans responded to Luchterhand's motion[2] stating that their absence at the arbitration was due to Michael's pain resulting from his cancer treatments. They argued that Michael's illness was not a valid reason to deny their request for a trial de novo. On September 6, 2013, Luchterhand filed a reply memo regarding his motion to strike the Crossans' request for a trial de novo.

On September 12, 2013, the trial court granted Luchterhand's motion to strike the Crossans' request for a trial de novo without oral argument. That same day, the trial court entered judgment on the arbitration award, also without oral argument. On October 3, 2013, represented by counsel for the first time,[3] the Crossans filed a CR 60 motion to vacate the judgment. They argued that Michael's illness constituted an unavoidable casualty or misfortune as contemplated by CR 60(b)(9) that prevented them from defending at the arbitration. Among other evidence, the Crossans attached the declaration of Dr. Chet Jangala who claimed that on June 17, 2013, he received a call from Rowena stating that Michael was having severe stomach pain and cramping. Dr. Jangala said that he advised Rowena to have Michael stay in bed or risk damage to his small intestine.

---

[2] It appears that the Crossans' motion was a response to Luchterhand's motion to strike request for a trial de novo.

[3] The Crossans claimed they needed the first continuance of the arbitration to find legal counsel, but it does not appear that they obtained counsel until this time.

4

The trial court held a show cause hearing on the Crossans' CR 60 motion on November 1, 2013. After hearing argument from the parties, the trial court denied the Crossans' motion and awarded fees to Luchterhand for responding.

The court opined that as of the date of the show cause hearing, there was still no declaration from a doctor expressing a medical opinion that Michael was medically unable to attend the arbitration. The trial court noted that Dr. Jangala's declaration does not even mention the time he spoke to Rowena and that there was no mention of the call to Dr. Jangala or of Dr. Jangala's advice in Michael's e-mails to Henry and Luchterhand's counsel. The trial court also considered the fact that the arbitrator did not have very much information about Michael's illness at the time of the hearing. The court concluded that there was an insufficient showing for relief under CR 60 and that an evidentiary hearing was unnecessary. The Crossans appeal.

## DISCUSSION

I. Crossans' Request for Relief under CR 60(b)(9)

For good cause shown, an arbitrator may allow a party absent from an arbitration an opportunity to appear at a subsequent hearing before making an award. MAR 5.4. A party who fails to participate in arbitration without good cause waives the right to a trial de novo. Id.

Here, the arbitration proceeded as scheduled on June 17, 2013. On June 19, 2013, Henry informed both parties that the hearing went forward to conclusion and that he would make his decision in a few days. On June 25, 2013, Henry entered his initial judgment based, in part, on MAR 5.4 and the Crossans' failure to participate at the arbitration. Henry entered his initial judgment on June 25, 2013—over one week after he

heard Luchterhand's case, one week after Michael's symptoms began to subside,[4] and six days after Henry informed the parties that he was in the process of making his decision. There is no indication in the record that the Crossans contacted Henry between June 17, 2013 and the day Henry entered the judgment in an attempt to make a showing of good cause. The only information Henry had about Michael's illness when he entered the arbitration award was what he gleaned from Michael's June 17th e-mail—that he was "just sick."

On July 3, 2013, the Crossans brought the issue of good cause for their absence before the trial court. The Crossans filed a request for a trial de novo and attached declarations from both Michael and Rowena. The Crossans explained that Michael has colon cancer and had been too ill to attend the arbitration. The Crossans filed another request for a trial de novo after the arbitration award was amended. On September 5, 2013, in their answer to Luchterhand's motion to strike their request for a trial de novo, Michael argued that his illness was a sufficient reason to grant a trial de novo. In this response to Luchterhand's motion, unlike in their declarations attached to their request for a trial de novo, Michael referred the court to specific doctors at the Seattle Cancer Center (Dr. Whiting) or the University of Washington Hospital (Dr. Gary Mann). Michael claimed that the doctors would be willing to provide letters attesting to his cancer treatment. Michael also offered to sign a release allowing the court to contact the doctors directly.

---

[4] In her declaration attached to the Crossans' request for a trial de novo, Rowena indicated that Michael was regaining his strength on May 18, 2013. As the arbitration was on June 17, 2013, we assume that Rowena meant June 18, 2013.

By requesting a trial de novo, the Crossans were effectively arguing to the trial court that Michael's illness constituted sufficient good cause under MAR 5.4 to avoid waiving the right to a trial de novo. Before the trial court could enter judgment on the arbitration award for Luchterhand, it had to resolve whether the Crossans did, in fact, waive their right to a trial de novo by failing to participate at the arbitration. Based on the evidence submitted, the trial court denied the Crossans' request for a trial de novo and entered judgment on the arbitration award. By virtue of this decision and subsequent entry of judgment, the trial court effectively ruled that the Crossans failed to show the requisite good cause necessary to avoid waiving their right to a trial de novo under MAR 5.4.

Therefore, the appropriate challenge on appeal is whether the trial court abused its discretion when it ruled that the Crossans failed to show sufficient good cause to warrant a trial de novo. Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion—discretion that is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. Pybas v. Paolino, 73 Wn. App. 393, 399, 869 P.2d 427 (1994).

Based on the record before us, at the time the trial court ruled on the Crossans' request for trial de novo, there was little evidence supporting the Crossans' argument that Michael's sickness constituted good cause. The only evidence was the Crossans' declarations and their response to Luchterhand's motion to strike, which reiterated what was in the Crossans' declarations. The trial court had no declaration from a doctor—only declarations from Michael and Rowena that Michael was sick on the day of the arbitration,

7

that Michael suffers from colon cancer, and that he has doctors that treat him at two different treatment facilities. The Crossans had not provided any sworn testimony that Michael was not able to attend the arbitration. Luchterhand's motion to strike informed the trial court that he repeatedly, fruitlessly requested that the Crossans produce evidence to his attorney that Michael was too ill to attend the arbitration. The Crossans made no attempt to explain to the trial court why Rowena was not able to attend the arbitration to protect their interests. Luchterhand also informed the trial court that the arbitration had already been delayed twice at the Crossans' request. The trial court did not abuse its discretion in striking the Crossans' request for a trial de novo and subsequently entering a judgment on the arbitration award.

The Crossans then moved to vacate the judgment on the arbitration award. They contended that under CR 60(b)(9), they adequately showed that casualty or misfortune prevented their attendance at the arbitration and that the judgment should be set aside. The trial court denied the Crossans' CR 60(b)(9) motion to vacate. The trial court reasoned that as of the date of the show cause hearing, despite the addition of Dr. Jangala's declaration, there was still no evidence that Michael was medically unable to attend the arbitration.

A motion under CR 60(b)(9) is properly directed at the judgment and the proceeding in the superior court that led to that judgment. See CR 1 ("These rules govern the procedure in the superior court."); CR 60(b) ("On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment."). Based on the record, neither casualty nor misfortune prevented the Crossans from properly advocating for their request for a trial de novo or defending against entry of judgment in the superior court.

8

They defended before the superior court their request for a trial de novo and defended against Luchterhand's argument that the Crossans failed to participate in the arbitration without good cause. They asserted before the superior court that casualty or misfortune—Michael's illness—prevented their participation in the arbitration proceeding. Repeating those arguments and adding additional evidence was akin to a motion to reconsider the denial of the motion for trial de novo, even though framed as a motion under CR 60(b)(9). The Crossans were not entitled to a second bite at that apple using CR 60. Relief under CR 60(b)(9) is plainly unavailable on these facts.

We acknowledge that Luchterhand did not object to the trial court's consideration of the motion on these grounds. Reaching the merits of the motion as argued, the evidence in the record supports the trial court's conclusion that Michael had not demonstrated that he was medically unable to attend the arbitration. The trial court did not abuse its discretion by denying the Crossans relief from judgment under CR 60(b)(9).

## II. Luchterhand's Attorney Fees

Luchterhand argues that he is entitled to attorney fees and costs for this appeal.

MAR 7.3 stipulates that the court shall assess costs and reasonable attorney fees against a party who appeals an arbitration award and fails to improve its position on the trial de novo. MAR 7.3 does not require the trial de novo to proceed on the merits in order to trigger a fee and cost award on appeal. See Kim v. Pham, 95 Wn. App. 439, 446-47, 975 P.2d 544 (1999). The Kim court interpreted MAR 7.3 to require a mandatory award of attorney fees when a party requests a trial de novo and does not improve on their position at trial because they failed to comply with the requirements for proceeding to a trial de novo. Id. One requirement of proceeding to a trial de novo is attendance at the

arbitration. <u>See</u> MAR 5.4 (failure to participate at arbitration without good cause waives the right to a trial de novo).

The Crossans timely requested a trial de novo, but their request was denied. The Crossans failed to comply with the requirements of MAR 5.4. As discussed above, the Crossans had an opportunity to provide good cause for their absence at the arbitration and they failed to do so. Therefore, the Crossans failed to comply with the requirements for proceeding to a trial de novo. As the Crossans have not improved their position, we grant Luchterhand's request for attorney fees and costs on appeal.

We affirm.

Appelwick, J

WE CONCUR:

Leach, J.                              Trickey, J